OPINION
{¶ 1} Appellant Helen Saffell ("mother") appeals the June 5, 2006 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her two minor children, and granted permanent custody of the children to appellee Tuscarawas County Job and Family Services ("TCDJFS"). Appellee, TCDJFS, has not filed a brief in this matter. Therefore, we may accept appellant's statement of facts and issues as correct and reverse the judgment if that action reasonably appears to be supported by appellant's brief. App.R. 18(C). State v. Caynor (2001),142 Ohio St.3d 424, 426, 2001-Ohio-3298, 755 N.E.2d 984, 986; Statev. Myers (1997), 119 Ohio App.3d 642, 645, 695 N.E.2d 1226,1228.
 {¶ 2} STATEMENT OF THE CASE AND FACTS
 {¶ 3} Appellant Helen Saffell is the mother of Christopher Daulton (DOB 06-159-0) and Shawn Daulton (DOB 02-27-92). The father of these children is Daniel Daulton.
 {¶ 4} The family resided in the State of Kentucky with several children in addition to Christopher and Shawn. The family was involved with Child Services while in that State between 1990 and 1995. Apparently, appellant moved on several occasions without notifying the appropriate agency. At one point appellant moved to Indiana and then back to Kentucky, apparently in an attempt to avoid Children's Services.
 {¶ 5} Reports of physical abuse first surfaced in 2004. Attempts to work with appellant by Children's Services were unsuccessful. In August, 2004 the children were removed from appellant's home after she refused to work with the agency in resolving the ongoing problems. In addition appellant's daughter ran away to her father's home in Kentucky.
 {¶ 6} On December 14, 2004 all parents stipulated that the children were dependent. Christopher and Shawn were placed in the custody of their father in January, 2005. Shawn was returned to TCDJFS custody in May, 2005. Christopher was returned to TCDJFS custody in September, 2005.
 {¶ 7} On November 29, 2005 the TCDJFS filed a motion for permanent custody. The case came before the trial court for an evidentiary hearing on May 23, 2006. On June 5, 2006 the trial court filed its Judgment Entry and written Findings of Facts and Conclusions of Law granting permanent custody to the TCDJFS.
 {¶ 8} The trial court found "Helen Saffell has a long history with children's services agencies in both Ohio and Kentucky. Her three oldest children continue to allege that they were repeatedly abused physically by their mother, although Ms. Saffell has always denied such allegations. Her home conditions have been poor and the children have demonstrated a variety of academic and behavior problems in school, which Ms. Saffell has been unable to rectify.
 {¶ 9} "Her oldest son, Christopher, refuses to visit with his mother and has requested that this motion be granted so he may be adopted into another household. Christopher would also like an opportunity to continue a relationship with his siblings who are placed elsewhere.
 {¶ 10} "Shawn suffers from intellectual deficiencies and has obtained an IQ score in the low 40s. His day-to-day living skills have vastly improved since his placement in foster care.
 {¶ 11} "On the surface, Helen has technically completed most of her case plan in that she has met and worked with professionals to whom she was directed. In Court, her appearance was neat and much more appropriate than many parties. She appears capable of maintaining an average job and household if she actually wished to meet these responsibilities". Judgment Entry, filed June 5, 2006.
 {¶ 12} Appellant testified that her sons are very close to each other and their other siblings. (T. at 27). They are also bonded to extended family members. (T. at 28). Specifically they are bonded to their maternal grandmother, and saw her approximately every other day prior to their removal. (T. at 28). Christopher has only attended four visits with Appellant in eight months. (T. at 22). Christopher was supposed to be visiting weekly, but only attended about once a month. (T. at 22). Christopher was not told that he had to attend visits, only that he needed to attend. (T. at 87).
 {¶ 13} Guardian Ad Litem, Attorney Karen Dummermuth stated that Christopher and Shawn are full brothers and are very close. (T. at 34). Due to Shawn's limitations, the siblings often act as a caretaker to Shawn. (T. at 34-35). Attorney Dummermuth stated that Christopher indicated he wanted to continue to have a relationship with his siblings and his maternal grandmother. (T. at 39). Attorney Dummermuth stated that it is very important for these boys to be placed together. (T. at 40). Christopher told his counselor that he wants contact with his siblings and when he is of age he intends to have regular contact with his family in Kentucky. (T. at 52). Attorney Dummermuth stated that Christopher has a very close relationship with his siblings and seems to gain a lot of his identity by this relationship. (T. at 43). Also, Christopher has stated that he would like to be adopted. (T. at 50). Attorney Dummermuth recommended the boys be placed into Planned Permanent Living Arrangement. (T. at 43).
 {¶ 14} Christopher has stated that he wants to be adopted. (T. at 38). However, he would like to maintain contact with his family at the same time. (T. at 39). Further, Christopher has been assured that should his current foster parents adopt they will allow appropriate contact with his siblings and extended family members. (T. at 39-40).
 {¶ 15} Shawn has developmental delays and his IQ is estimated to be forty. (T. at 16). Attorney Dummermuth stated that Shawn has an extremely low IQ and can be easily manipulated. (T. at 41).
 {¶ 16} These boys were placed in the custody of the TCDJFS in December 2004. (T at 55). They were then placed with their father in January, 2005. (T. at 56). Shawn was returned to the custody of TCDJFS on May 11, 2005. (T. at 56). The caseworker testified that Shawn was returned to their custody because Father was unable to control Shawn's behavior and Shawn has supposedly hit Father's paramour in the ear and possibly busted her eardrum. (T. at 56). Christopher was returned to TCDJFS custody in September, 2005. (T. at 6). Christopher was returned because Father also had trouble controlling him. (T. at 56). Christopher was smoking marijuana and not following house rules. (T. at 57). Christopher admitted to the caseworker that he was smoking marijuana and also had a positive drug test. (T. at 86).
 {¶ 17} At the foster home where the boys are currently placed there are five other children. (T. at 86). Shawn had recently been moved to the foster home where Christopher is placed. (T. at 86). According to the Guardian, Christopher has had difficulty at school with fighting and has been close to suspension. (T. at 40). The boys had only been placed together for a few weeks at the time of trial. (T. at 35). The Guardian was concerned about how Shawn would react to the new home. (T. at 40). She stated that this home was very relaxed, and Shawn had done very well in his last foster home which was very structured. (T. at 40). The caseworker testified that the boys were not initially placed into the same foster home because the family was concerned about finding additional services for Shawn's special needs. (T. at 80).
 {¶ 18} Appellant completed her psychological evaluation in early 2005. (T. at 58). Appellant was not active in counseling from July 2005 to January 2006. (T. at 9). Appellant had restarted counseling at the time of trial. (T. at 8).
 {¶ 19} Appellant testified that she had maintained the same residence for approximately eight months at the time of trial. (T. at 6). She resides alone. (T. at 6). Appellant has maintained employment at Hercules Plating for the past year. (T at 7). Appellant has visited consistently with her children and theses visits have often included siblings and extended family. (T. at 22, 23). Christopher has only attended four visits with Appellant in eight months. (T. at 22). Christopher was supposed to be visiting weekly, but only attended about once a month. (T. at 22).
 {¶ 20} In its Findings of Facts and Conclusions of Law the trial court found that appellant "denies any physical abuse of her children and alleges that they have lied about this because they are angry at her. She went on to indicate that she is not responsible for their anger and it has been caused by their father. [Appellant] demonstrates almost no insight into her own responsibility for the removal of her children on any occasion . . . When asked to indicate the problems that resulted in their removal of her children, she indicated that she had trouble keeping the house clean and she had difficulty communicating with her children. . . . [appellant] completely fails to acknowledge the severe emotional difficulties that she has imposed upon these children and shows no signs of now being able to handle or correct these problems." Judgment Entry, filed June 5, 2006.
 {¶ 21} It is from that judgment entry, appellant-mother appeals, raising the following assignments of error:
 {¶ 22} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY, INSTEAD OF PLANNED PERMANENT LIVING ARRANGEMENT, WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. (Appendix at A-4).
 {¶ 23} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. (Appendix at A-3).
 {¶ 24} "III. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE TUSCARAWAS COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PUT FORTH GOOD FAITH AND DILIGENT EFFORTS TO REHABILITATE THE FAMILY SITUATION (Appendix at A-3)."
 I. {¶ 25} In her first assignment of error appellant argues that the court should have considered a planned permanent living arrangement instead of permanent custody. We disagree.
 {¶ 26} "R.C. 2151.353(A) (5) is unambiguous and does not authorize the trial court to consider a planned permanent living arrangement unless the children services agency has filed a motion requesting such a disposition. Accordingly, we hold that after a public children services agency or private child placing agency is granted temporary custody of a child and files a motion for permanent custody, a juvenile court does not have the authority to place the child in a planned permanent living arrangement when the agency does not request this disposition".In re A.B., 110 Ohio St.3d 230, 2006-Ohio-4359 at ¶ 37.
 {¶ 27} In the case at bar, TCJFS did not request a planned permanent living arrangement. Accordingly the juvenile court did not have the authority to place the child in a planned permanent living arrangement.
 {¶ 28} Appellant's first assignment of error is overruled.
 II. {¶ 29} Herein, mother asserts the trial court erred in finding that the children could not or should not be placed with appellant within a reasonable time was against the manifest weight and sufficiency of the evidence. Appellant does not contest the trial court's decision that permanent custody was in the best interests of the children.
 {¶ 30} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 31} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 32} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 33} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 34} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E) (1) through (16) exist with respect to each of the child's parents.
 {¶ 35} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 36} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 37} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
"* * *
 {¶ 38} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child"
 {¶ 39} While evidence was adduced that mother has made progress toward the completion of her case plan services, evidence was also presented that she has failed to alleviate the conditions which led to the placement of the children with the agency.
 {¶ 40} The trial court determined Christopher and Shawn could not or should not be placed with mother at this time or within a reasonable period of time. The trial court specifically found the Agency established by clear and convincing evidence following the removal of the minor children from mother's home, mother failed continuously and repeatedly to substantially remedy the conditions which led to the removal. The trial court found an inability and/or unwillingness on mother's part to acknowledge the severe emotional difficulties that she has imposed upon the children and shows no signs of now being able to handle or correct these problems.
 {¶ 41} The evidence adduced at the hearing established that appellant-mother failed to attend counseling for a six month period during 2005-2006. (T. at 8-9). Appellant-mother minimized her own responsibility for the emotional problems of the children. In spite of the fact that the children have been in appellant-mother's custody substantially longer than they were in the custody of their father, appellant-mother believes that the father is primarily and almost exclusively responsible for the children's behavior and their removal from her home. (T. at 11-12; 14; 18; 20; 24; 25). The family has an extensive history with Children Services Agencies in Ohio, Indiana and Kentucky. (Id. at 12-13). Appellant-mother claimed that she was completely unaware prior to the date of the hearing that the children had alleged that she was abusive toward them. (Id. at 14). Beth Bertini appellant-mother's case manager testified that she had spoken with appellant-mother six to eight times about the children's reports of physical abuse. (T. at 67). Appellant-mother characterizes her problems with the children as resulting from her lack of self-esteem and poor communication skills. (Id. at 17; 18; 121; 126; 128-29). Although she claims she is dealing with issues of abuse and neglect, appellant-mother's counselor's reports contained in the trial court's file indicate that she has not addressed those issues. (Id. at 18; 26).
 {¶ 42} Testimony at the hearing clearly established that Christopher does not want any contact with his mother and would prefer permanent custody to be granted. (T. at 38-39; 65-66; 76).
 {¶ 43} Upon a review of the evidence in light of the above statutory factors, we find the record contains clear and convincing evidence to support the trial court's determination. Accordingly, the trial court did not err when it determined the children could not be placed with appellant within a reasonable time or should not be placed with appellant.
 {¶ 44} Appellant's second assignment of error is overruled.
 III. {¶ 45} In her third assignment of error appellant urges the trial court erred in finding that the Tuscarawas County Department of Job and Family Services met its reasonable efforts burden. Specifically, appellant maintains that the Agency was required to add family counseling to the case plan and that Christopher was not told that he had to attend visits with appellant-mother.
 {¶ 46} Pursuant to R.C. 2151.419, the agency which removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts.
 {¶ 47} Appellee devised a comprehensive reunification plan to assist appellant in remedying the problems which caused the children to be removed. The case plan addressed various issues including housing, counseling, and assistance with parenting and life skills. The court found the agency had made all reasonable diligent efforts and had worked with the family for an extensive period of time with no significant improvement.
 {¶ 48} When a trial court is considering whether the agency made reasonable efforts to prevent the removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.In re Brewer (Feb. 12, 1996), Belmont App. No. 94-B-28,1996 WL 65939, at 3; In re Davidson-Rush, 5th Dist. No. 2006 CA 00121,2006-Ohio-4873 at ¶ 50. "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. 2151.419(A) (1).
 {¶ 49} We have reviewed the record, and we find it is replete with evidence, that while the mother has made improvement and worked to complete the majority of her case plan, the parties made no progress to alleviate the core concerns in spite of the agency's reasonable efforts to reunify the family.
 {¶ 50} The third assignment of error is overruled.
 {¶ 51} The Judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the Judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed. Costs to appellant.