OPINION
{¶ 1} Appellant Robert Rush, Sr. appeals from the April 6, 2006, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Robert Rush, Sr. is the biological father of Chyna Davidson-Rush (DOB 10/10/01), Christopher Davidson-Rush (DOB 7/22/03) and Robert Rush., Jr. (DOB 2/4/05). Jasmine Davidson is the children's mother.
 {¶ 3} On April 15, 2005, the Stark County Department of Job and Family Services (hereinafter "the Agency") filed a complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging that the three children were dependent and neglected children. The complaint alleged that appellant and Jasmine Davidson used drugs and/or alcohol, were unemployed and did not have a plan to obtain employment, and were in an abusive relationship. The complaint further alleged that the two failed to adequately supervise their children. The three children were placed in shelter care custody on the same date.
 {¶ 4} At a hearing held on May 11, 2005, appellant and Jasmine Davidson stipulated that the children were dependent children and the trial court found them to be dependent. The matter then came on for a dispositional hearing. As memorialized in a Judgment Entry filed on May 12, 2005, the three children were placed in the temporary custody of the Agency and were placed together in a foster home.
 {¶ 5} As part of his case plan, appellant was required to attend parenting classes at Goodwill, to obtain employment, to undergo psychological testing and to successfully complete any recommended services. Appellant also was required to obtain a substance abuse assessment from Quest, to submit to weekly urinalysis, and to follow all treatment recommendations.
 {¶ 6} On February 15, 2006, the Agency filed a Motion for Permanent Custody of the three children pursuant to R.C.2151.414. The Agency, in its motion, alleged, in relevant part, as follows:
 {¶ 7} "Father completed his psychological evaluation. The evaluation had serious reservations as to Fathers progress to complete his case plan. Father has not completed his substance abuse treatment. Father has not submitted to any urinalysis testing and has admitted to ongoing marijuana use.
 {¶ 8} "Father has not completed his recommended counseling for anger management or his individual counseling. Father has not completed his Goodwill Parenting program."
 {¶ 9} Subsequently, a permanent custody hearing was held on April 3, 2006. The following testimony was adduced at the hearing.
 {¶ 10} At the hearing, Latrese Sanders, a family service worker with the Agency, testified that she was the ongoing worker assigned to the three children in this case and had been working with the family since April of 2005. Sanders testified that the three children had been in the same foster home throughout their placement.
 {¶ 11} According to Sanders, the case plan for appellant and Jasmine Davidson required them both to complete psychological evaluations. Sanders testified that appellant completed a psychological evaluation at Melymbrosia and that, as a result of the evaluation, appellant's case plan was amended to require him to enroll in a long term batterer's treatment program due to allegations of domestic violence. Sanders further testified that, to the best of her knowledge, appellant had not enrolled in such a program.
 {¶ 12} At the hearing, Sanders also testified that, as part of his case plan, appellant was to complete and comply with a substance abuse evaluation and to submit to weekly urinalysis for drug screening. The following testimony was adduced when Sanders was asked whether appellant had undergone the substance abuse evaluation:
 {¶ 13} "A. Yes. He . . . he's done the evaluation. He did it back in May. But he did not follow through with the intensive outpatient program so I referred him to go back. He went back a second time and didn't follow through. He was due to go back um March 17th and did not go back for another a third assessment.
 {¶ 14} "Q. Okay. Um you stated as a recommendation from the evaluation you received Father was to undergo intensive outpatient treatment?
 {¶ 15} "A. Yes.
 {¶ 16} "Q. Okay how would you receive notification if he is in compliance with that program?
 {¶ 17} "A. They will send us a copy of the recommendation.
 {¶ 18} "Q. And to the best of . . .
 {¶ 19} "A. If . . . if he's followed through.
 {¶ 20} "Q. To the best of your knowledge has he followed through with that program?
 {¶ 21} "A. No he's not." Transcript at 17-18.
 {¶ 22} When asked, Sanders testified that she had not received any urine screens from appellant since April of 2005 and was concerned that appellant, who admitted that he continued using marijuana, was still using.
 {¶ 23} As is stated above, appellant's case plan also required him to undergo parenting instruction at Goodwill, which, according to Sanders, he failed to do. Sanders further testified that appellant was not currently employed and that, although he received social security benefits, she did not believe the amount was sufficient enough for appellant to support himself and his three children. When asked, Sanders stated that she did not believe that appellant had completed his case plan and that she recommended that the Agency receive permanent custody of the children.
 {¶ 24} Sanders also testified at the best interest portion of the hearing. Sanders testified that the three children, who are bi-racial, were very bonded to each other and do not have any physical disabilities. When questioned about whether the children had any developmental disabilities, Sanders testified that Chyna has a speech delay and that there were concerns that Robert was developmentally delayed in terms of his gross motor skills. Sanders also testified that the children, who had been in the temporary custody of the Agency continuously since April of 2005, did not have any behavioral problems. According to Sanders, no relatives had been proposed by either appellant or Jasmine Davidson for possible placement of the children.
 {¶ 25} At the hearing, Sanders testified that both parents visited with the children every other Wednesday from 1:00 p.m. to 3:00 p.m. and that she had an opportunity to view some of the visits. Sanders testified that appellant interacted with the children by reading to them and playing with toys, but that he frequently did not show up for visitation. According to Sanders, "he'll say he'll be there but don't come." Transcript at 33. Sanders testified that appellant had missed as many as three consecutive visits. The following is an excerpt of Sander's testimony:
 {¶ 26} "Q. Okay. Um at this time what is your recommendation ah as in the best interest of the children?
 {¶ 27} "A. Permanent custody.
 {¶ 28} "Q. All right. Is the current placement of the children . . . have you observed the children in their current placement?
 {¶ 29} "A. Yes.
 {¶ 30} "Q. Um how does that placement appear to go for the children?
 {¶ 31} "A. Um very well. They don't have any behavior problems um with the foster mother at all.
 {¶ 32} "Q. How do they seem to interact with the foster mother?
 {¶ 33} "A. Um very bonded to her. Um they listen to her. They receive her. Um their happy to see her when they return from visits. They sometimes don't want to leave.
 {¶ 34} "Q. And this is a foster to adopt home?
 {¶ 35} "A. No it's not.
 {¶ 36} "Q. Okay so the agency would have to seek a new placement for these children?
 {¶ 37} "A. Yes. There is a . . . um a foster home that is willing . . . interested in adoption of these children.
 {¶ 38} "Q. Okay. Have they met these children?
 {¶ 39} "A. No.
 {¶ 40} "Q. Okay. And obviously the agency is restricted from recruiting that home until permanent custody would be granted?
 {¶ 41} "A. Correct." Transcript at 34-35.
 {¶ 42} Pursuant to a Judgment Entry filed on April 6, 2006, the trial court granted permanent custody of the three children to the Agency and terminated appellant's parental rights. The trial court, in its entry, found that the children could not be placed with any biological parent within a reasonable time and should not be placed with any biological parent.
 {¶ 43} Appellant now raises the following assignments of error on appeal:
 {¶ 44} "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE DAVIDSON-RUSH CHILDREN TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 45} "II. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE DAVIDSON-RUSH CHILDREN TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE IT'S DETERMINATION THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 46} "III. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THE DAVIDSON-RUSH CHILDREN TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES BECAUSE ITS DETERMINATION THAT REASONABLE EFFORTS [WERE MADE] TO ASSIST THE PARENT TO COMPLETE THE CASE PLAN AND THAT THE DEPARTMENT USED REASONABLE EFFORTS TO PREVENT THE REMOVAL OF THE CHILDREN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 47} For purposes of judicial economy, we shall address appellant's assignments of error out of sequence.
 III {¶ 48} Appellant, in his third assignment of error, argues that the trial court's determination that the Agency used reasonable efforts to assist appellant to complete his case plan and to prevent the removal of the children from the home was against the manifest weight of the evidence. Appellant specifically maintains that the Agency did not provide him sufficient opportunity to comply with his case plan before filing for permanent custody. We disagree.
 {¶ 49} Children services agencies are statutorily required to develop case plans for children in their custody and the case plans should include objectives for each of the child's parents. R.C. 2151.412. Thus, when the agency files a complaint requesting permanent custody, a trial court must determine whether the agency made reasonable efforts to return the child to the parents before it authorizes the removal of the child. In re Wright,
Ross App. No. 01CA2627, 2002-Ohio-410, at 8. This requirement is applicable regardless of how long the child has been in the agency's temporary custody. Further, the agency has the burden of proving that it made reasonable efforts to implement a reunification plan. R.C. 2151.419(A)(1). A "reasonable effort" is ". . . an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In reWeaver (1992), 79 Ohio App.3d 59, 63, 606 N.E.2d 1011.
 {¶ 50} When a trial court is considering whether the agency made reasonable efforts to prevent the removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.In re Brewer (Feb. 12, 1996), Belmont App. No. 94-B-28,1996 WL 65939, at 3. "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C.2151.419(A)(1).
 {¶ 51} Based upon our review of the record, we find that the trial court did not err in determining that the Agency made reasonable efforts. As is set forth above, appellant was provided with a case plan that required him to enroll in a long term batterer's treatment program, to undergo extensive outpatient treatment for substance abuse problems, and to submit to weekly urine screens. Appellant, however, failed to do so. In addition, the testimony adduced at the hearing shows that appellant failed to follow through with parenting classes at Goodwill and to obtain employment.
 {¶ 52} At the April 3, 2006, hearing, the following testimony was adduced when Latrese Sanders was asked what efforts she had made to allow the parents "to work this case plan":
 {¶ 53} "A. Um I've provided them with bus passes you know to get to any services that they needed. Um I've talked to Mother you know as far as you know housing . . . different housing option that she could use. Um as far as you know obtaining her own housing because her and Robert were not going to be together. I've talked to Robert several times you know about the case plan and getting services done.
 {¶ 54} "Q. Are there any other services or is there any different avenues of providing help to this family that you can think of that would allow them to mitigate the concerns which have led to this filing?
 {¶ 55} "A. Um I think that the services are in place are the services that the parents need. Um the Goodwill Parenting you know the substance abuse. I believe that you know those are services that we utilize to help alleviate the concerns that we have with them.
 {¶ 56} "Q. Do you feel there's anything further you could do to help this family in regards to completion of the services?
 {¶ 57} "A. Not . . . no not besides picking up and taking them to every appointment. No.
 {¶ 58} "Q. At this point do you feel that the parents have completed their case plan?
 {¶ 59} "A. No." Transcript at 20-21.
 {¶ 60} Based on the foregoing, we find that the trial court did not err in finding that the Agency had made reasonable efforts to assist appellant in completing his case plan and in preventing the removal of the minor children. We concur with the trial court that the Agency used reasonable efforts in implementing the case plan.
 {¶ 61} Appellant's third assignment of error is, therefore, overruled.
 I, II {¶ 62} Appellant, in his first and second assignments of error, argues that the trial court's findings that the children could not or should not be placed with appellant within a reasonable time and that granting of permanent custody to the Agency was in the children's best interest were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 63} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 64} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 65} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 66} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 67} In the case sub judice, testimony was adduced that appellant failed to comply with this case plan. As is set forth in detail above, appellant failed to provide weekly urinalysis and admitted to Latrese Sanders, that he continued using marijuana on a daily basis. In addition, appellant failed to complete a parenting course at Goodwill, enroll in a program for batterers, or to comply with recommended substance abuse treatment. Appellant also failed to obtain stable employment. In short, the evidence showed that appellant failed to comply with his case plan.
 {¶ 68} Thus, there was competent and credible evidence that appellant had failed to remedy the problems that initially caused the children to be removed from the home.
 {¶ 69} As is stated above, appellant also contends that the trial court's finding that the granting of permanent custody is in the children's' best interest is against the manifest weight and sufficiency of the evidence.
 {¶ 70} R.C. 2151.414 states as follows: "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 71} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 72} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 73} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 74} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 75} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 76} In the case sub judice, testimony was adduced at the hearing that the children were doing well in a foster home and were very bonded to each other and to their foster mother. They had been in the same foster home since their removal and, according to Latrese Sanders, sometimes did not want to leave the same. Sanders further testified that neither appellant nor Jasmine Davidson had proposed any relatives for placement of the children. Moreover, Sanders also testified that there was another foster home interested in adopting the children.
 {¶ 77} Based on the foregoing, we find that the trial court's findings that the children could not or should not be placed with appellant within a reasonable time and that granting of permanent custody to the Agency was in the children's' best interest were not against the manifest weight and sufficiency of the evidence.
 {¶ 78} Appellant's first and second assignments of error are, therefore, overruled.
 {¶ 79} Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Edwards, J. Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.