[Cite as *In re Z.L.*, 2025-Ohio-4852.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE Z.L., ET AL.  :
  :  Nos. 114984, 114986,
Minor Children  :  and 114987
  :
[Appeal by C.G., Mother]  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 23, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD22906833, AD22906834, and AD22906835

---

*Appearances:*

Matthew O. Williams, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant mother ("Mother") appeals the juvenile court's decision terminating her parental rights and awarding permanent custody of her children, Z.L. (d.o.b. 5/3/2012), H.L. (d.o.b. 2/18/2014), and A.L. (d.o.b. 6/26/2015) (collectively known as "the children"), to the Cuyahoga County Division of Children

and Family Services ("CCDCFS" or "the agency").  Mother claims that the juvenile court's decision to grant permanent custody to the agency was not supported by sufficient evidence, was against the manifest weight of the evidence, and that the agency failed to engage in reasonable efforts to reunify the family.

{¶ 2} Our review of the record reflects that the juvenile court's findings and order granting permanent custody are not against the manifest weight of the evidence and that sufficient evidence exists to support the juvenile court's findings. We also affirm the juvenile court's finding that the agency made reasonable efforts toward reunification.

## I.  Procedural History and Relevant Facts

### A.  Previous Involvement With the Agency

{¶ 3} In January 2016, the agency filed a complaint for dependency and temporary custody of Mother's three children.  The complaint alleged that Mother had suffered a mental-health crisis and threatened to kill the children.  The complaint also noted that oldest child, Z.L., had previously been removed from the parents' care while residing in New Jersey because of concerns for Mother's mental health, as well as domestic violence occurring between Mother and the children's father, H.L. ("Father").  These facts prevented Mother from providing safe and adequate care for the children.  The complaint noted that the children had been reunified with Mother in March 2014.  The agency was granted temporary custody of the children, and a case plan was developed toward reunification.

{¶ 4} Father was ultimately granted legal custody of the children on January 28, 2018.

**B. This Case**

{¶ 5} On June 5, 2022, Mother and Father engaged in an act of violence in front of the children that required police intervention. Father was arrested as a result. The agency was granted predispositional custody of the children on June 29, 2022.

{¶ 6} In July 2022, the agency filed a complaint with the juvenile court alleging the children to be abused and dependent. The agency also requested a disposition of legal custody to Mother, with an order of protective supervision. The complaint noted that Mother and Father have a domestically violent relationship.

{¶ 7} The agency was granted predispositional-emergency-temporary custody at a hearing on July 25, 2022, and ultimately temporary custody at a subsequent hearing on October 11, 2022. These temporary custody orders were extended on two separate occasions: once on August 24, 2023, and again on February 15, 2024.

{¶ 8} On September 12, 2024, the agency filed a motion to modify temporary custody to permanent custody for the children. A hearing was held on this motion on February 27, 2025.

**C. Permanent-Custody Hearing and Appeal**

{¶ 9} Prior to the permanent-custody hearing, Father filed a motion for legal custody of the children or, in the alternative, a motion for legal custody to Father

with protective supervision. Mother was not present at the permanent-custody hearing but was represented by counsel. Father and his counsel were present, along with the children's guardian ad litem ("GAL") Jean Brandt and the children's counsel.

{¶ 10} The agency's extended services worker, Natasha Johnson ("Johnson"), testified on behalf of the agency. She testified that she was assigned to this case in July 2022. She stated that the agency first became involved with this family in 2012 because of concerns with the oldest child, Z.L., with respect to neglect and domestic violence. The other two children had not yet been born. Mother had relocated from New Jersey to Cuyahoga County. Father was identified as the aggressor in a domestic-violence incident in 2012 and was not supposed to be in the home.

{¶ 11} Z.L. was removed from the home and placed in the temporary custody of the agency in the 2012 case. Mother and Father were required to participate in a number of services in the 2012 case for substance abuse, domestic violence, and parenting. After approximately a year, Z.L. was reunited with Mother.

{¶ 12} Johnson stated that in 2016, the agency again became involved with the family. The basis for the agency's involvement concerned mental health and domestic violence. All three children were removed from Mother's care. After approximately a year and a half, the children were reunified with Father. Prior to reunification, Father had been required to participate and complete programs

concerning domestic violence, substance abuse, and parenting. These objectives were similar to the objectives in the 2012 case.

**{¶ 13}** In 2022, the agency once again became involved with the family. The complaint alleged that on June 5, 2022, Mother and Father engaged in an act of violence in front of the children that required police intervention. They were removed from Father and have been in the uninterrupted custody of the agency since June 29, 2022. The children were ultimately adjudicated, with Johnson testifying that this was the third adjudication for Z.L. and the second adjudication for H.L. and A.L.

**{¶ 14}** Johnson testified that the permanency plan for the children since their removal from Father in June 2022 had been reunification. A case plan was created to facilitate reunification and adopted by the juvenile court. Mother's objectives on the plan included domestic violence, mental health, housing, and substance abuse. Father's objectives included domestic violence, mental health, anger management, parenting, family therapy, and substance abuse, and he was asked to maintain his own independent housing.

**{¶ 15}** When this case was initiated, criminal charges were pending against Father and there was a no-contact order in effect protecting Mother and the children. Specifically, there was a no-contact order between Mother and Father in effect until September 2023. Johnson testified that there was also a protection order in place for the children from Father "until November or December of 2022."

{¶ 16} Johnson testified that Mother was referred for domestic-violence services to The Journey Center for Healing, which she completed by August 2022. Father was also referred for domestic-violence services. Johnson testified that, including the 2012 and 2016 cases, Father had completed at least three domestic violence programs and Mother had completed "at least two[.]"

{¶ 17} In February 2024, another domestic-violence incident took place between Mother and Father. Johnson testified that Father told her that he had invited Mother over. Father denied that he told Johnson that he invited Mother over. Father told Johnson that Mother got upset about something that had happened in the past and that Mother started to attack him. Father advised her that Mother had destroyed his window and TV stand and that she attempted to slice his tires.

{¶ 18} Johnson noted that there was currently a protection order in place at the time of the hearing that had been sought by Father against Mother. Mother had been criminally charged for this incident, and the case was still pending at the time of the trial.

{¶ 19} Notwithstanding the protection order, Johnson testified that Mother and Father had still been in contact with one another. In September 2024, Mother sent Johnson an email that she had received from Father. When she spoke to Father about the email, he did not deny having sent it to Mother. He also told Johnson that Mother had tried to contact him as well.

{¶ 20} Johnson testified that she did not believe that either parent had benefitted from any of the domestic-violence classes they had completed within the last decade. She also testified that there was no time left in the temporary-custody period for them to complete this objective of the case plan.

{¶ 21} Substance abuse was also on each parent's case plan. Johnson testified that Mother had tested positive for marijuana in 2022. She was referred to Moore Counseling. Mother completed initial treatment and had six months of sobriety when there was a new allegation. Mother has since "refused to do any type of testing or anything for the agency." At the time of trial, Mother had no verifiable sobriety with the agency.

{¶ 22} Mental health was another objective on each parents' case plan. Johnson explained that there were concerns that the parents may have had undiagnosed mental-health issues that affected their interactions with each other. Johnson also noted that Mother had a previous mental-health history with the agency, while Father had aggression.

{¶ 23} Mother was referred to The Centers for Families and Children for a mental-health assessment. Mother was initially diagnosed with an unspecified depression that was later adjusted to include post-traumatic stress disorder. Johnson testified that she has not been able to verify if Mother is currently compliant with the treatment recommendations. Johnson stated that she has not had any contact with Mother since September 2024 and has not seen any recent behavioral

change in Mother. As such, Johnson stated that Mother had not sufficiently complied with this case-plan objective.

{¶ 24} There is no current visitation schedule in place for Mother. Johnson stated that the last time Mother had in-person visits with the children was in March 2024. Mother may have had some contact with the children when they had been placed with Father but that could not be verified.

{¶ 25} With respect to Mother's residence, Johnson testified that she has been unable to verify Mother's address. She testified that she does not have Mother's current phone number but, when she did previously communicate with Mother, Mother would refuse to tell Johnson where she lived. Johnson testified that she does not have any reason to believe that if the children were returned to Mother's care, she could meet their basic needs.

{¶ 26} Johnson also testified that during this case, the children had been placed in the custody of their grandfather from June 2024 to October 2024. They were removed from grandfather because of allegations that grandfather was returning the children to Father. There were also issues with Johnson and the therapist being able to access the grandfather's home.

{¶ 27} Attempts were made to locate other relatives as possible caregivers or custodians. Johnson stated that she located an aunt of the children in Dayton that ultimately changed her mind. There was also a second aunt that the agency was considering, but she was living in a two-bedroom residence the last time Johnson spoke to her, so she could not be approved. Johnson testified that there is nobody

currently approved by the agency as a caregiver or custodian nor has anyone filed a motion with the court for legal custody of the children.

{¶ 28} Father called multiple witnesses on his behalf, including Mary Atkins, the foster mother of A.L. and Z.L.; Flannery Suvak, the Vice President/General Manager at SCT Medical Clinic; Anthony Lash, the clinical director at CHOICES Behavioral Healthcare ("CHOICES"); Robert Cade, Father's family counselor at CHOICES; Marcus Jordan, the program manager for the Fatherhood Initiative and RISE Reentry Program at University Settlement; and Herbert Williams, a social worker for the Step Forward agency. A summary of these witnesses' testimony can be found in this court's decision in Father's appeal. *In re Z.L.,* No. 114976 (8th Dist. Oct. 23, 2025) ("Father's appeal").

{¶ 29} Father also testified at trial. With regard to Mother, Father testified about the domestic-violence incident that occurred while this case was pending. Father stated that he came home to find that Mother had broken into his house. Mother was yelling and screaming, claiming that her overnight visits had been cancelled. Mother then charged at him with a knife and proceeded to "tear the house up." Father maintained that he called the police, but the police never came. He claimed that he apprised the social worker of the incident at the following visit.

{¶ 30} After testimony concluded, the children's GAL Jean Brandt ("Brandt") presented her report and recommendation. In her report, Brandt recommended granting permanent custody of the children to the agency. She noted that Father had failed to comply with the case-plan services such that overnight

visits could not begin between him and the children. She also noted her concern that at the beginning of this case, Mother and Father were living together with the children and that it was reasonable to believe that based upon that history, if the children are returned to one or the other parent that eventually the family would be living together once more.

### D. Order and Appeal

{¶ 31} On February 28, 2025, the juvenile court issued an order granting permanent custody to the agency. The order indicated that the court had spoken to the children in person at an in camera interview and that it had assessed and determined the credibility of all the witnesses that testified at trial. The order also denied Father's motion for legal custody, or in the alternative, legal custody with protective supervision. It is from this order that Mother appeals, raising the following assignments of error:

> 1. The trial court's decision to grant permanent custody of the children to CCDCFS was not supported by sufficient evidence.
>
> 2. The trial court's decision to grant permanent custody of the children to CCDCFS was against the manifest weight of the evidence.
>
> 3. The trial court erred by terminating [Mother's] parental rights and awarding permanent custody of the children to CCDCFS where CCDCFS had failed to make reasonable efforts to reunify the family.

## II. Law and Argument

{¶ 32} We recognize that "'[a]ll children have the right, if possible, to parenting from either biological or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re L.W.*, 2017-Ohio-657, ¶ 21 (8th Dist.),

quoting *In re J.B.,* 2013-Ohio-1704, ¶ 66 (8th Dist.). And that a "'parent's right to raise a child is an essential basic civil right.'" *In re N.B.,* 2015-Ohio-314, ¶ 67 (8th Dist.), quoting *In re Hayes,* 79 Ohio St.3d 46, 48 (1997). When deciding to terminate an individual's parental rights to their children, the goal "'is to make a more stable life for the dependent children and to facilitate adoption to foster permanency for children.'" *In re U.B.,* 2025-Ohio-1265, ¶ 22 (8th Dist.), quoting *N.B.* at ¶ 67. The main focus of any child-custody decision must be what is in the best interests of the child. *See Venable v. Venable,* 3 Ohio App.3d 421, 423 (8th Dist. 1981).

{¶ 33} The termination of parental rights has often been described as "'the family law equivalent of the death penalty in a criminal case.'" *J.B.* at ¶ 66, quoting *In re Hoffman,* 2002-Ohio-5368, ¶ 14. Doing so, it must only be done as an "'alternative of last resort.'" *L.W.* at ¶ 21, quoting *In re Gill,* 2002-Ohio-3242, ¶ 21 (8th Dist.).

{¶ 34} "R.C. 2151.414 sets out specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child." *In re A.M.,* 2020-Ohio-5102, ¶ 18, citing *In re C.F.,* 2007-Ohio-1104, ¶ 22. To grant permanent custody, the juvenile court is required to engage in a two-prong approach. The juvenile court must find clear and convincing evidence that 1) one or more of the conditions set forth in R.C. 2151.414(B)(1)(a)-(e) exist, and 2) a grant of permanent custody is in the child's best interest. R.C. 2151.414(D)(1)/(2).

{¶ 35} Clear and convincing evidence has been defined as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.,* 2008-Ohio-4825, ¶ 42, quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954). "'We will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence.'" *In re U.B.,* 2025-Ohio-1265*,* at ¶ 23, quoting *In re L.A.,* 2024-Ohio-5103, ¶ 17 (8th Dist.).

{¶ 36} The Ohio Supreme Court has held that

the proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties.

*In re Z.C.,* 2023-Ohio-4703, ¶ 18.

{¶ 37} Here, Mother presents three assigned errors for our review, alleging that the award of permanent custody was in error because 1) it was not supported by sufficient evidence, 2) it was against the manifest weight of the evidence, and 3) the agency failed to make reasonable efforts to unify the family. We will address each assigned error below.

**First and Second Assigned Errors for Review**

{¶ 38} In her first and second assigned errors for review, Mother alleges that the juvenile court's decision to award permanent custody to the agency is not supported by sufficient evidence. And even if the evidence was sufficient, Mother argues that it was against the manifest weight of the evidence since there was no evidence demonstrating that permanent custody was in the best interests of the children. Since these assignments of error overlap with respect to the arguments and evidence presented, we will address them together.

**A. Standard of Review**

{¶ 39} Challenges to the sufficiency of the evidence and a claim that the lower court's decision is against the manifest weight of the evidence are two distinct concepts that are """both quantitatively and qualitatively different."" *In re Z.C.,* 2023-Ohio-4703, at ¶ 13, quoting *Eastley v. Volkman,* 2012-Ohio-2179, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. On the one hand, "sufficiency is a test of adequacy." *Thompkins* at 386. While on the other hand, a manifest weight challenge concerns "'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis in original.) *Thompkins* at 387*,* quoting *Black's Law Dictionary* (6th Ed. 1990). "When applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when "'the evidence is legally sufficient to support the jury verdict as a matter of law."'" *Bryan-Wallman v. Domonko,*

2007-Ohio-4918, ¶ 3, quoting *Thompkins* at 386, quoting *Black's Law Dictionary* at 1433.

{¶ 40} Yet "even if a trial court judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *Eastley* at ¶ 12. When reviewing for manifest weight in permanent custody cases, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.* at ¶ 14.

{¶ 41} "When weighing the evidence, we must always be mindful of the presumption in favor of the finder of fact." *In re L.A.,* 2024-Ohio-5103, at ¶ 17 (8th Dist.), citing *In re Z.C.* at ¶ 14. The Ohio Supreme Court has noted that the "'underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *In re Z.C.* at ¶ 14, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). "'"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."'" *Id.,* quoting *Seasons Coal Co., Inc.* at 80, fn. 3, quoting 5 Ohio Jur.3d, Appellate Review, § 603, at 191-192 (1978).

**B. Analysis**

**First prong — R.C. 2151.414(B)(1)**

{¶ 42} Pursuant to R.C. 2151.414(B)(1)(d), the juvenile court found that the children had been in the temporary custody of a public children-services agency or a private child-placing agency for 12 or more months of a consecutive 22-month period. The court also found that under R.C. 2151.414(B)(1)(e) at least one of the children in the custody of the parent or parents from whose custody the children have been removed had been adjudicated an abused, neglected, or dependent child on three separate occasions by a court in this state or another state.

{¶ 43} Mother does not dispute either of these findings. Rather, Mother focuses her challenges on the court's finding that removal was in the best interest of the children. As such, our discussion will primarily be focused on the second prong of the analysis.

**Second prong – Best Interest of the Child – R.C. 2151.414(D)(1) and/or (D)(2)**

{¶ 44} In determining whether permanent custody is in the best interest of a child, the juvenile court must consider the relevant factors set forth in either R.C. 2151.414(D)(1) or (D)(2). Here, the juvenile court found "by clear and convincing evidence, pursuant to both 2151.414(D)(1) and (D)(2), that it is in the best interest of the child[ren] to be placed in the permanent custody of the CCDCFS [Cuyahoga County Division of Children and Family Services.]"

{¶ 45} Mother disputes the juvenile court's determination that granting permanent custody of the children is in the children's best interests. Mother only appears to challenge the finding the juvenile court made with respect to subsection (D)(1)(d) of R.C. 2151.414, concerning the children's need for legally secure permanent placement and that placement cannot be achieved because neither parent "remedied the cause for removal." In doing so, Mother argues that permanent placement could have been achieved by placing the children with Father.

{¶ 46} We note that Mother does not appear to challenge the juvenile court's findings under subsection (D)(2). We do not need to address the juvenile court's findings under (D)(1) if the court also determined that it was in the children's best interest to be placed into permanent custody under subsection (D)(2). *See In re A.S.,* 2021-Ohio-3829, ¶ 42 (8th Dist.) (noting that "[w]e do not need to determine if the trial court correctly applied the R.C. 2151.414(D)(1) factors, however, because the trial court also found that it was in [the child's] best interest to be placed in the permanent custody of the agency under R.C. 2151.414(D)(2)"). Rather, "'[a] finding under section (D)(2) of R.C. 2151.414 mandates that the trial court find it is in a child's best interest to be placed in the agency's permanent custody.'" *In re U.B.,* 2025-Ohio-1265, at ¶ 28 (8th Dist.), quoting *In re A.S.* at ¶ 43.

{¶ 47} For these reasons, we will begin our analysis under R.C. 2151.414(D)(2) that provides

> [i]f all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent

custody of a public children services agency or private child placing agency:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶ 48} If the juvenile court makes the four enumerated findings set forth in subsection (D)(2), "'permanent custody is per se in the child's best interest and the court "shall" commit the child to the permanent custody of the agency.'" *In re U.B.* at ¶ 30, quoting *In re A.S.* at ¶ 44. The juvenile court found each of the above factors were satisfied.

### a. R.C. 2151.414(D)(2)(a)

{¶ 49} To satisfy the (D)(2)(a) factor, the juvenile court must find that "one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." R.C. 2151.414(D)(2)(a). This factor is satisfied if the juvenile court finds that at least one of the factors in division (E) exists. *In re U.B.* 2025-Ohio-1265, at ¶ 31 (8th Dist.). Here, the court found several of the statutory

factors exist in division (E) apply, including R.C. 2151.414(E)(1), (4), (10), (14), (15), and (16). The juvenile court found returning the children to the home of Mother or Father would be contrary to the children's best interests. We will address each of the factors found by the juvenile court concerning Mother. A comprehensive analysis of these factors concerning Father can be found in Father's appeal.

### R.C. 2151.414(E)(1) Factor

{¶ 50} With respect to subsection (E)(1), the court found "the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside the child[ren's] home." There is credible evidence in the record demonstrating that Mother failed to remedy the conditions that caused the children to be removed from the home.

{¶ 51} After the children were removed and placed in the custody of the agency, a permanency plan was put in place with the goal of reunifying the children with Mother. Johnson testified that Mother's objectives on the case plan included domestic-violence, mental-health, housing, and substance-abuse concerns.

{¶ 52} Johnson testified that Mother was referred to domestic-violence services by the agency. Mother initially completed her domestic-violence course in August 2022. Johnson testified that including the 2012 case, the 2016 case, and the instant case, Mother had completed two domestic-violence programs.

{¶ 53} In February 2024, after the domestic-violence programs had been completed, another domestic-violence incident occurred between Mother and Father. Father alleged that during this incident Mother attempted to stab him.

Father eventually sought and was awarded a protection order as a result of the incident that was still in place as of the hearing. Notwithstanding this protection order, Johnson testified that Mother and Father had been in contact while the order while in place. Johnson testified that she believed that neither parent had benefitted from the domestic-violence courses that they had participated in. Johnson also stated that there was no time under temporary custody for either to be able to satisfy this objective.

{¶ 54} Substance abuse was also included as an objective for each parent under the case plan. Johnson provided that Mother tested positive for marijuana in 2022. Mother received counseling and was sober for six months. Afterwards, there was a new allegation concerning Mother. At this point, Johnson explained that Mother "refused to do any type of testing or anything for the agency." She also noted that the agency does not have any verification of Mother's sobriety.

{¶ 55} Mental health was also an objective for each parent under the case plan. Johnson testified that Mother had a history of mental-health issues with the agency. She stated that Mother was referred for a mental-health assessment with the Centers for Families and Children. Mother was diagnosed with unspecified depression, later adjusted to include post-traumatic stress disorder. Johnson testified that she had not been in contact with Mother since September 2024 and has not been able to verify if Mother is currently compliant with her mental-health treatment. Johnson stated that she had not seen any positive behavioral changes in

Mother throughout the case and did not believe that Mother had complied with the mental health case-plan objective.

{¶ 56} Here, Johnson testified with respect to the numerous referrals and help offered by the agency during the course of this case. Nonetheless, Johnson testified that she saw no observable change in Mother's behavior. For these reasons, there exists sufficient evidence in the record to support the juvenile court's finding under R.C. 2151.414(E)(1) that Mother failed to remedy the conditions that caused removal of the children from the home, particularly with respect to Mother's and Father's continued domestic violence issues. Nonetheless, Mother claims that the court's finding is against the manifest weight of the evidence.

{¶ 57} To dispute the agencies evidence on this issue, Mother does not argue that she benefited from the programs. Rather, she claims that Father presented evidence demonstrating that he did benefit from these programs. A more comprehensive analysis concerning Father's performance under the case-plan objectives can be found in Father's appeal, wherein the panel determined that the record supports a finding that Father failed to remedy the conditions that led the to the removal of the children from the home.

{¶ 58} As with any manifest-weight analysis, we are reminded that "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *In re Z.C.,* 2023-Ohio-4703, at ¶ 14, quoting *Seasons Coal Co., Inc.,* 10 Ohio St.3d at 80, fn. 3. The juvenile court

was in the best position to weigh the proffered testimony of the evidence presented. *See id*. at ¶ 14. Since the agency presented sufficient evidence in support of this finding, we will not substitute our judgment for that of the juvenile court.

## R.C. 2151.414(E)(4) Factor

{¶ 59} With respect to subsection (E)(4), the juvenile court found "[t]he parent has demonstrated a lack of commitment toward the [children] by failing to regularly support, visit, or communicate with the [children] when able to do so, or provide an adequate permanent home for the [children]."

{¶ 60} Johnson testified that Mother had not had any in-person visits with the children since March 2024, almost a year prior to trial. Johnson did note that Mother may have had some contact with the children when they were placed with Father, but could not verify it because "they're not upfront." Johnson also testified that the last time she saw Mother, in person, was in June 2024 and all subsequent attempts to contact Mother since had been unsuccessful. The testimony presented at trial supports the trial court's finding that Mother has failed to regularly support, visit, or communicate with the children.

## R.C. 2151.414(E)(10) Factor

{¶ 61} With respect to subsection (E)(10), the juvenile court found that "[t]he parent has abandoned the [children.]" A child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the

child after that period of ninety days." R.C. 2151.011(C). Mother does not challenge the juvenile court's findings with respect to this factor.

### R.C. 2151.414(E)(14) Factor

{¶ 62} The juvenile court also found that under R.C. 2151.414(E)(14), "the parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."

{¶ 63} The children were initially removed from the home because of a domestic-violence incident that occurred between Mother and Father. And after engaging in domestic-abuse counseling, another domestic-violence incident took place in February 2024 between Mother and Father for which Father eventually obtained a protection order against Mother. And despite Father having a protection order in place, Johnson testified that Mother and Father continued to have contact with each other, potentially exposing the children to further domestic-violence incidents.

{¶ 64} The testimony presented by Johnson is sufficient to support the juvenile court's finding that the parents are unwilling to protect the children from suffering emotional abuse in that they have continued to engage in domestic violence and violation of protection orders. *See In re Ki.B*, 2019-Ohio-999, ¶ 65-67 (8th Dist.). Such evidence supports the court's finding that Mother is not willing to cease the activity that caused removal of the children in the first instance.

## R.C. 2151.414(E)(15) Factor

{¶ 65} The juvenile court also determined that

the parent has committed abuse as described in section 2151.031 of the Ohio Revised Code against the [children] or cause or allowed the [children] to suffer neglect as described in section 2151.031 of the Ohio Revised Code, and the court determines that the seriousness, nature, or likelihood of reoccurrence of the abuse or neglect makes the [children's] placement with the [children's] placement with the [children's] parent a threat the [children's] safety.

{¶ 66} Here, the evidence presented at trial demonstrated a number of incidents between Mother and Father leading to the removal of the children from their custody. And as discussed above, despite participating in numerous domestic-violence courses, the parents continue to engage in domestic violence. And despite a protection order being in place, Johnson testified that Mother and Father still remain in contact.

## R.C. 2151.414(E)(16) Factor

{¶ 67} With respect to subsection (E)(16), the juvenile court found the following factors relevant: "Father has convictions for domestic violence. Mother was not present for trial and has not appeared in court at a minimum since the permanent custody motion was filed." These findings are clear from the record and not disputed by Mother.

{¶ 68} In order to satisfy the first enumerated factor R.C. 2151.414(D)(2)(a), only one of the factors set forth in R.C. 2151.414(E) need be met. *See In re U.B.,* 2025-Ohio-1265, at ¶ 40 (8th Dist.). Here, the juvenile court found multiple applicable factors under subsection (E) are satisfied. Each of these findings are

supported by credible and competent evidence.  Therefore, juvenile court's finding under R.C. 2151.414(D)(2)(a) is satisfied.

### b.  R.C. 2151.414(D)(2)(b)

{¶ 69} To satisfy R.C. 2151.414(D)(2)(b), the juvenile court must find "[t]he child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code."  Here, it is undisputed that the children had been in the agency's custody since June 2022.  At the time of trial, the children had been in the uninterrupted custody of the agency for over two years and no longer qualify for temporary custody under R.C. 2151.415.

{¶ 70} R.C. 2151.415(D)(4) provides, in relevant part, that "the court shall not order an existing temporary-custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section." At the time of trial, the children no longer qualified for temporary custody.  As such, this finding is satisfied.

### c.  R.C. 2151.414(D)(2)(c)

{¶ 71} R.C. 2151.414(D)(2)(c) is satisfied if "[t]he child does not meet the requirements for a planned-permanent-living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code."  The juvenile court found that the children did not meet these requirements.

**{¶ 72}** R.C. 2151.353 provides if a child is adjudicated an abused, neglected, or dependent child, the court may place a child that is at least 16 years of age in a planned-permanent-living arrangement, so long as certain elements are met.

**{¶ 73}** Mother does not dispute the court's finding, nor is there evidence presented to satisfy any of the requirements to place the children into a planned-permanent-living arrangement. Rather, the record demonstrates that none of the children qualify for a planned-permanent-living arrangement.

**{¶ 74}** As the statute makes clear, "'[t]o qualify for a planned permanent–living arrangement under 2151.353, the child must, among other things, be "sixteen years of age or older."'" *In re T.B.,* 2025-Ohio-2075, at ¶ 41 (8th Dist.), quoting *In re A.F.,* 2023-Ohio-4423, ¶ 51 (8th Dist.). At the time of the hearing, the oldest child, Z.L., was 12 years old. Therefore, the children are each "'too young to be placed into a planned permanent living arrangement.'" *Id.,* quoting *In re D.P.,* 2020-Ohio-6663, ¶ 25 (12th Dist.).

**{¶ 75}** Further, there is nothing in the record that supports any of the additional requirements under R.C. 2151.353. As a result, the record supports the juvenile court's finding under R.C. 2151.414(D)(2)(c).

### d. R.C. 2151.414(D)(2)(d)

**{¶ 76}** Pursuant to the final finding under (D)(2), the juvenile court found that "[p]rior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal Custody." Mother does not contest this finding. Here, there is nothing in the record concerning a relative or other

interested person filing a motion for legal custody of the children. Also, Johnson testified with respect to the attempts that were made by the agency to locate other relatives as possible caregivers or custodians. At the time of the hearing, no suitable relatives or possible caregivers had been determined. As a result, the juvenile court's finding under this factor is supported by the record.

{¶ 77} The juvenile court's findings under R.C. 2151.414(D)(2) are supported by competent and credible evidence in the record. Because all of the factors under R.C. 2151.414(D)(2) apply, "'permanent custody was necessarily in the best interest of the child and the juvenile court was required to grant permanent custody to CCDCFS.'" *In re U.B.,* 2025-Ohio-1265, at ¶ 47 (8th Dist.), quoting *In re P.J.,* 2021-Ohio-1821, ¶ 26 (8th Dist.). "'A finding under section (D)(2) of R.C. 2151.414 mandates the trial court find it is in a child's best interest to be placed in the agency's permanent custody.'" *Id.,* quoting *In re A.S.,* 2021-Ohio-3829, at ¶ 42 (8th Dist.).

{¶ 78} Since the juvenile court's determination under R.C. 2151.414(D)(2) is supported by competent and credible evidence sufficient to support its decision to grant custody of the children to the agency, we do not need to determine if the juvenile court correctly applied the factors set forth under (D)(1). *See In re U.B.* at ¶ 48. Accordingly, Mother's first two assignments of error are overruled.

**Third Assigned Error for Review**

{¶ 79} In her third assignment error for review, Mother alleges that the juvenile court erred in granting permanent custody of the children to the agency because the agency failed to make reasonable efforts to reunify the family.

## A. Applicable Law

{¶ 80} Ohio's child-welfare laws "are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *In re C.F.,* 2007-Ohio-1104, at ¶ 29, quoting R.C. 2151.01(A). In doing so, "R.C. 2151.419 requires the court to determine whether the public children services agency that filed the complaint in the case has made reasonable efforts to make it possible for the child to return safely home." *In re C.N.,* 2003-Ohio-2048, ¶ 36 (8th Dist.). Nonetheless, the Ohio Supreme Court has recognized that "R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413." *In re C.F.* at ¶ 43.

{¶ 81} However, this does not relieve the agency of its duty to make reasonable efforts to reunify the child and parent. "At various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification." *Id.* at ¶ 42. To that end, and "[with] limited exception, an agency must make reasonable efforts toward family reunification during child-custody proceedings prior to the termination of parental rights." *In re N.C.,* 2025-Ohio-2012, ¶ 15 (8th Dist.), citing *C.F.* at ¶ 43. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *C.F.* at ¶ 43.

**B. Analysis**

{¶ 82} Here, the record is replete with orders issued by the juvenile court, prior to the permanent-custody hearing, finding that the reasonable efforts had been made by the agency. In the judgment entry issued on October 31, 2022, the juvenile court specifically found that the agency

> has made reasonable efforts to prevent removal of the child, to eliminate the continued removal of the child from the home, or to make it possible for the child to return home. The case-specific findings are: For Mother, mental health services and domestic violence classes. For Father, domestic violence classes, parenting classes, mental health services, and anger management classes. For the child, counseling services.

The court again made similar "reasonable effort" findings throughout the pendency of this case in judgment entries issued on August 24, 2023; February 15, 2024; and October 9, 2024. Neither Mother nor Father objected to any of these findings.

{¶ 83} As discussed above, Johnson testified that case plans were put in place for both Mother and Father and the agency referred both to a number of different counseling agencies to address their respective domestic-violence, mental-health, parenting, and substance-abuse issues. Johnson stated that Mother had cut off contact with the agency and her multiple attempts to contact Mother were unsuccessful. She also testified that she did not believe the counseling benefited either for the reasons discussed above.

{¶ 84} In considering whether the agency made reasonable efforts to reunite the children with the parents, "the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the

statute." *In re J.B.,* 2020-Ohio-3675, ¶ 21 (8th Dist.), citing *In re Davidson-Rush,* 2006-Ohio-4873, ¶ 50 (5th Dist.). ""Reasonable efforts" does not mean all available efforts."" *Id.,* quoting *In re Lewis,* 2003-Ohio-5262, ¶ 16 (4th Dist.). In making this determination, "the child's health and safety shall be paramount." R.C. 2151.419(A)(1).

{¶ 85} After the hearing and although it was not required to do so, the juvenile court once again found that

> reasonable efforts were made to prevent the removal of the [children] to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family include: For the Mother, Mental Health, Substance Abuse, Domestic Violence and Housing Services. For the Father, Domestic Violence, Anger Management, Parenting, Substance Abuse, and Family Counseling Services. For the [Children], Counseling Services.

{¶ 86} Accordingly, we cannot say that the juvenile court erred in finding that the agency made reasonable efforts to reunify the children with Mother and Father. Mother's third and final assigned error for review is overruled.

## Conclusion

{¶ 87} For the foregoing reasons, we conclude that the juvenile court's decision granting permanent custody of the children to the agency is not against the manifest weight of the evidence, that the evidence is sufficient to support the juvenile court's findings, and that the agency made reasonable efforts to unite the children with Mother and Father.

{¶ 88} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY J. BOYLE, J., and
DEENA R. CALABRESE, J., CONCUR