[Cite as *In re U.B.*, 2025-Ohio-1265.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE  U.B. | : | |
| | | No. 114341 |
| A Minor Child | : | |
| | | |
| [Appeal by J.W., Mother] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  April 10, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-23-900061

---

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Michele L. Wessel, Assistant Prosecuting
Attorney, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant-mother, J.W. ("Mother"), appeals the juvenile court's decision terminating parental rights and awarding permanent custody of her minor child, U.B., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency").  Mother claims that the juvenile court's decision to

grant permanent custody to the agency was against the manifest weight of the evidence. Our review of the record reflects that the juvenile court's findings and order granting permanent custody are supported by competent, credible evidence, and we affirm the juvenile court's decision.

## I. Procedural History and Relevant Facts

### A. Initial Removal

{¶ 2} In May 2021, CCDCFS filed a complaint for neglect and temporary custody of four of Mother's children, including U.B. The complaint alleged that Mother lacked stable and appropriate housing, had a substance-abuse problem, and had untreated mental-health problems, all of which prevented her from providing appropriate care for the children. Predispositional temporary custody was initially granted to the father of one of the children. In June 2021, the agency was granted predispositional temporary custody of the children. The complaint was ultimately dismissed since the matter could not be resolved within the statutory time frame.

### B. Case at Issue

{¶ 3} On January 5, 2023, the agency filed a complaint with juvenile court for dependency and temporary custody of U.B.[1] The complaint alleged that Mother lacked appropriate housing and had mental-health and long-standing-substance-abuse issues. The juvenile court granted predispositional temporary custody to the agency the same day.

---

[1] The remaining three children in the initial complaint were adjudicated neglected in a separate case. Two were in the temporary custody of the agency at the time of the filing of this complaint, and the third had been recently emancipated.

{¶ 4} An adjudicatory hearing was held on March 28, 2023. U.B. was adjudicated to be dependent and placed in the temporary custody of the agency.

{¶ 5} On May 10, 2023, the agency filed a motion to modify temporary custody to permanent custody. A hearing was held on this motion on August 5, 2024.

### C. Permanent Custody Hearing and Appeal

{¶ 6} Mother was represented by counsel at the permanent-custody hearing. U.B.'s guardian ad litem, Cynthia Morgan ("GAL"), was also present. The agency's social worker, Chaquelya Patterson, testified on behalf of the agency. Mother and Mother's chemical dependency counselor, Christine Ferguson, testified on behalf of mother. The GAL also testified to her report and recommendation.

### 1. Chaquelya Patterson

{¶ 7} Chaquelya Patterson ("Patterson") is a case manager at CCDCFS. She had been assigned to this case since July 2023. She testified that Mother had been involved with the agency since 2002 and that Mother had previously lost permanent custody of four of her children to the agency. At the time of trial, Mother also had three additional children that had been adjudicated neglected, one of whom was ultimately emancipated.

{¶ 8} Patterson testified that in this case, the agency was initially granted temporary custody of U.B. due to Mother's failure to provide adequate housing, Mother's substance-abuse issues, and Mother's mental-health issues. A case plan

was filed in 2021 with the goal of reunification. Mother was required to obtain suitable housing and to receive substance-abuse and mental-health services.

{¶ 9} Patterson testified that Mother told her that she had been diagnosed with bipolar disorder, depression, PTSD, and anxiety. Mother was referred to a mental-health counselor through OhioGuidestone and with Care Alliance. However, Mother was inconsistent with her appointments with Care Alliance and went to OhioGuidestone only once in 2021 or 2022. Patterson stated that it was not until late 2023 that Mother started to consistently see a therapist[2] with Key Counseling. She further testified that Mother had informed her that she stopped taking her mental-health medication in January 2024.

{¶ 10} With respect to Mother's substance-abuse issues, Patterson testified that Mother had been diagnosed with cannabis disorder. Patterson stated that Mother had not made any progress with respect to this part of her case plan. She testified that Mother had been testing positive for over a year.[3] Patterson testified that Mother refused to submit to a drug test in July 2024.

{¶ 11} Patterson stated that Mother obtained housing in June 2024, two months prior to the trial. She testified that Mother had been without adequate

---

[2] Mother treated with Christine Ferguson at Key Counseling Services. Ferguson is a licensed clinical social worker and licensed clinical independent chemical dependency counselor. However, some witnesses referred to her as a "therapist."

[3] Mother had tested positive for cocaine and marijuana in September 2023; for marijuana in December 2023; twice for marijuana in January 2024; for marijuana in March 2024; twice for marijuana in April 2024; twice for marijuana in May 2024; and twice for marijuana in June 2024.

housing for over three years. Patterson stated that she had been unable to verify if the home was appropriate. She testified that she had a visit scheduled with Mother to view the house but Mother did not show up. She attempted to reschedule with Mother but was unsuccessful.

{¶ 12} Patterson testified that while U.B. has been in the agency's custody, Mother has had weekly supervised visits with U.B. Patterson believed that U.B. and Mother bonded at these visits; however, sometimes she would have to redirect Mother on certain things "that's not in the best interest of the child." She explained, for example, Mother would continue to bring candy to the visits even though she had told Mother that candy is not appropriate due to U.B.'s oral health.

{¶ 13} Patterson also testified that U.B. has bonded with her foster parents. U.B. has told Patterson that she would like to stay with her foster parents.

**2. Christine Ferguson**

{¶ 14} Christine Ferguson ("Ferguson") is a licensed clinical social worker and chemical dependency counselor with Key Counseling Services. She testified that Mother became her client in 2022. She met with Mother three to four times a week to begin with, ultimately settling on a biweekly schedule. There was eventually a gap in Mother's treatment, but in November 2023, they began meeting consistently again.

{¶ 15} Ferguson testified that Mother's treatment plan was for her to address her substance-use disorder with marijuana. She stated that Mother has been diagnosed with PTSD, general anxiety disorder, and major depression. Mother told

Ferguson that she smokes marijuana to address the symptoms associated with these disorders and that the medications prescribed to Mother were having a negative effect on her. Ferguson testified that she advised Mother "that there was a reasonable way for her to therapeutically use her marijuana and to watch out, so-to-speak, for issues concerning abuse or over use." Ferguson testified that Mother did not have a legal medical marijuana card.

{¶ 16} Ferguson also testified that she did not believe that Mother was a danger to herself or U.B. She had witnessed Mother with U.B. and stated that Mother is very strongly bonded with U.B. and that U.B. should be returned to Mother.

### 3. Mother

{¶ 17} Mother also testified at trial. She admitted that she had been diagnosed with cannabis disorder and tobacco addiction. She testified that she was consistent with her mental-health medications but that there were side effects, such as paranoia, agitation, and teeth grinding. She stated that she spoke to the agency and they told her she did not need the medications.

{¶ 18} Mother stated that she has been smoking marijuana for over 20 years. She testified that she smoked marijuana therapeutically to treat her mental-health issues because she did not like the way her mental-health medications made her feel. She also acknowledged that she has been consistently testing positive for marijuana.

{¶ 19} With respect to her housing situation, Mother testified that she had signed up for housing three years earlier but only obtained housing on June 3, 2024.

She testified that she had been approved for housing in 2021 but nobody told her she had been approved.

**4. The GAL**

{¶ 20} At the conclusion of testimony, the GAL presented her report and recommendation. The GAL noted that the case plan was initially started in June 2021, yet Mother did not obtain housing until June 2024 and continued to use marijuana. She also noted the extensive dental work U.B. required as well as her limited learning and educational skills when the agency was first granted temporary custody. Specifically, when U.B. entered kindergarten, she could only recite her first and last name, identify come colors, and hold a pencil. U.B. did not have any other readiness skills. The GAL stated that the skills U.B. possessed today were all learned during the school year of 2023-2024. The GAL recommended that permanent custody of U.B. be awarded to the agency.

**D. Order and Appeal**

{¶ 21} On August 20, 2024, the juvenile court issued an order granting permanent custody to the agency. It is from this order that Mother appeals, raising the following assignment of error:

> The trial court abused its discretion by granting permanent custody of Appellant's child to CCDCFS against the manifest weight of the evidence.

**II. Law and Argument**

{¶ 22} We begin our analysis with the recognition that "'[a]ll children have the right, if possible, to parenting from either biological or adoptive parents which

provides support, care, discipline, protection and motivation.'" *In re L.W.,* 2017-Ohio-657, ¶ 21 (8th Dist.), quoting *In re J.B.,* 2013-Ohio-1704, ¶ 66 (8th Dist.). Similarly, a "'parent's right to raise a child is an essential basic civil right.'" *In re N.B.,* 2015-Ohio-314, ¶ 67 (8th Dist.), quoting *In re Hayes,* 79 Ohio St.3d 46, 48 (1997). By terminating a person's parental rights, the goal "is to make a more stable life for the dependent children and to facilitate adoption to foster permanency for children." *N.B.* at 67, citing *In re Howard,* 1986 Ohio App. LEXIS 7860, *5 (5th Dist. Aug. 1, 1986).

## A. Standard of Review

{¶ 23} Pursuant to R.C. 2151.414, a juvenile court's judgment granting permanent custody must be supported by clear and convincing evidence. Clear and convincing evidence has been defined as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.,* 2008-Ohio-4825, ¶ 42, quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. "We will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence." *In re L.A.,* 2024-Ohio-5103, ¶ 17 (8th Dist.), citing *N.B.* at ¶ 48.

{¶ 24} Here, Mother argues that the award of permanent custody was against the manifest weight of the evidence. When reviewing for manifest weight in

permanent custody cases, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14. As such, the "juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence 'if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence.'" *In re A.S.,* 2021-Ohio-3829, ¶ 39 (8th Dist.), quoting *In re A.P.,* 2016-Ohio-5849, ¶ 16 (8th Dist.).

### B. Analysis

{¶ 25} "R.C. 2151.414 sets out specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child." *In re A.M.,* 2020-Ohio-5102, ¶ 18, citing *In re C.F.,* 2007-Ohio-1104, ¶ 22. In order to grant permanent custody, the juvenile court is required to engage in a two-prong approach. The juvenile court must find by clear and convincing evidence that (1) one or more of the conditions set forth in R.C. 2151.414(B)(1)(a)-(e) exist and (2) a grant of permanent custody is in the child's best interest. R.C. 2151.414(B)(1).

### 1. First Prong – R.C. 2151.414(B)(1)

{¶ 26} Here, the juvenile court found, under R.C. 2151.414(B)(1)(d), that the child had been in the temporary custody of one or more public children's services

agencies or private child placing agencies for 12 or more months of a consecutive 22-month period. Mother does not dispute this finding. As such, our analysis is focused only on the second prong: the juvenile court's determination that a grant of permanent custody was in U.B.'s best interest.

### 2. Second Prong – Best Interest of the Child – R.C. 2151.414(D)(1) and/or (D)(2)

{¶ 27} In determining whether permanent custody is in the best interest of the child, the juvenile must court consider the relevant factors set forth in either R.C. 2151.414(D)(1) or (D)(2). Here, the juvenile court found "by clear and convincing evidence that it is in the best interest of the child to be placed in the permanent custody of the CCDCFS [Cuyahoga County Division of Children and Family Services.]" The court made this determination under both subsections (D)(1) and (D)(2).

{¶ 28} Mother disputes the juvenile court's determination that granting permanent custody of U.B. was in the child's best interest. Mother only challenges the findings the juvenile court made with respect to subsection (D)(1) of R.C. 2151.414. Mother does not challenge the juvenile court's findings under subsection (D)(2). We do not need to address the juvenile court's findings under (D)(1) if the court also determined that it was in the child's best interest to be placed into permanent custody under subsection (D)(2). *See A.S.*, 2021-Ohio-3829, at ¶ 42 (8th Dist.) (noting that "[w]e do not need to determine if the trial court correctly applied the R.C. 2151.414(D)(1) factors, however, because the trial court also found

that it was in [the child's] best interest to be placed in the permanent custody of the agency under R.C. 2151.414(D)(2)."). Rather, "[a] finding under section (D)(2) of R.C. 2151.414 mandates that the trial court find it is in a child's best interest to be placed in the agency's permanent custody." *Id.,* citing *In re G.A.,* 2020-Ohio-2949, ¶ 59 (8th Dist.).

{¶ 29} We begin our analysis under R.C. 2151.414(D)(2) that provides:

> If all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:
>
> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> (b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.
>
> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.
>
> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶ 30} If the juvenile court makes the four enumerated findings set forth in subsection (D)(2), "permanent custody is per se in the child's best interest and the court 'shall' commit the child to the permanent custody of the agency." *A.S.* at ¶ 44, citing *G.A.* at ¶ 61. The juvenile court found each of the above factors were satisfied.

### a. R.C. 2151.414(D)(2)(a)

{¶ 31} To satisfy the (D)(2)(a) factor, the juvenile court must find that "one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." R.C. 2151.414(D)(2)(a). This factor is satisfied if the juvenile court finds that at least one of the factors in division (E) exists. Here, the court found several of the statutory factors exist, including R.C. 2151.414(E)(1), (2), (4), (11), and (16). The juvenile court found "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." We will address each of the factors found by the juvenile court.

### R.C. 2151.414(E)(1) and (2) Factors

{¶ 32} With respect to subsection (E)(1), the court found "the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." With respect to (E)(2), the court found, "[t]he chronic chemical dependency of the parent . . . is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year." There is competent and credible evidence in the record that Mother failed to remedy the conditions that caused U.B. to be removed from the home and that Mother's chronic chemical dependency is so severe that she is unable to provide a permanent home for U.B.

{¶ 33} In May 2021, U.B. was initially removed from Mother's custody due to inadequate housing, substance abuse, and mental health of Mother. Mother was

diagnosed with PTSD, bipolar disorder, depression, and anxiety. She was prescribed medications to address these issues but had stopped taking the medications as of January 2024.

{¶ 34} Mother testified that she has been smoking marijuana for 20 years, and despite receiving treatment for her mental health and substance abuse as part of her case plan, she continues to test positive for marijuana. She had also tested positive for cocaine within a year prior to the trial. Mother and her chemical dependency counselor each testified that Mother continues to use marijuana for therapeutic purposes. Mother does not have a medical marijuana card, and her chemical dependency counselor testified that Mother has not been prescribed marijuana. The GAL also testified that Mother was never advised to get a medical marijuana card.

{¶ 35} With respect to Mother's lack of adequate housing, the evidence demonstrates that Mother eventually obtained housing in June 2024. However, Patterson testified that she was unable to visit the apartment to determine if it is appropriate. Patterson stated that Mother did not show up to the scheduled appointment and she had been unable to schedule a follow-up appointment with Mother. Prior to obtaining housing, Mother did not have adequate housing for over three years. For these reasons, there exists competent and credible evidence in the record to support the juvenile court's finding under R.C. 2151.414(E)(1) and (2) that Mother failed to remedy the conditions that caused removal of U.B. and that Mother continues to have a chronic chemical dependency.

## R.C. 2151.414(E)(4) Factor

{¶ 36} With respect to subsection (E)(4), the juvenile court found that "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or provide an adequate permanent home for the child." With respect to U.B.'s father, Patterson testified that he was on the case plan but has not made any progress. Patterson had not made contact with him, nor had he had any involvement in case-plan services. With respect to Mother, as addressed above, the testimony revealed that after three years of U.B. being placed in the agency's custody, Mother has failed to remedy the conditions that caused U.B.'s removal. There is competent and credible evidence in the record that after three years, Mother has failed to provide an adequate permanent home for U.B.

## R.C. 2151.414(E)(11) Factor

{¶ 37} With respect to subsection (E)(11), the juvenile court found that

[t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Ohio Revised Code . . . and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 38} CCDCFS presented journal entries that Mother had four of her children previously committed to the permanent custody of the agency. Under this factor, the burden thus shifts to Mother. *See* R.C. 2151.141(E)(11). As discussed above, the record indicates that Mother cannot demonstrate that she can provide a

legally secure permanent placement and adequate care for the health, welfare, and safety of U.B. As such, there is competent and credible evidence in the record to support the juvenile court's finding.

### R.C. 2151.414(E)(16) Factor

{¶ 39} With respect to subsection (E)(16), the juvenile court found that "Mother has shown a pattern of not putting child's best interest first." Specifically, the juvenile court noted Mother brought other individuals to visitations, even after being instructed not to due to U.B.'s anxiety; Mother would bring sweets to U.B. after being instructed not to due to U.B.'s dental health; and Mother failed to address U.B.'s educational needs prior to removal. These facts were presented through the testimony of the case worker and are supported by the record.

{¶ 40} In order to satisfy the first enumerated factor R.C. 2151.414(D)(2)(a), only one of the factors set forth in R.C. 2151.414(E) need be met. Here, the juvenile court found multiple applicable factors under subsection (E) are satisfied. Each of these findings are supported by credible and competent evidence. Therefore, the juvenile court's finding under R.C. 2151.414(D)(2)(a) is satisfied.

### b. R.C. 2151.414(D)(2)(b)

{¶ 41} To satisfy the R.C. 2151.414(D)(2)(b) factor, the juvenile court must find that "[t]he child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code." Here, it is undisputed that U.B. had been in CCDCFS's custody since 2021. At the time of trial, U.B. had been in the uninterrupted custody of the

agency for three years and no longer qualifies for temporary custody under R.C. 2151.415.

{¶ 42} R.C. 2151.415(D)(4) provides, in relevant part, that "the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section." At the time of trial, U.B. no longer qualified for temporary custody. As such, this finding is satisfied.

### c. R.C. 2151.414(D)(2)(c)

{¶ 43} The R.C. 2151.414(D)(2)(c) factor is satisfied if "[t]he child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code." The juvenile court found that U.B. did not meet these requirements.

{¶ 44} R.C. 2151.353 provides if a child is adjudicated an abused, neglected, or dependent child, the court may

> [p]lace the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, that the child is sixteen years of age or older, and that one of the following exists:

> The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care now and for the foreseeable future

beyond the date of the dispositional hearing held pursuant to section 2151.35 of the Revised Code.

The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D)(1) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.

The child has been counseled on the permanent placement options available to the child, and is unwilling to accept or unable to adapt to a permanent placement.

{¶ 45} There is no evidence presented to satisfy any of the requirements to place U.B. into a planned permanent living arrangement. Rather, the record demonstrates that U.B. has been placed in a family-like setting with foster parents. Patterson testified that U.B. has bonded with her foster parents and U.B. has advised Patterson that she would like to stay with her foster parents. There was also no testimony that U.B. was unable to function in a family-like setting. There is nothing in the record that supports any of the requirements under this section. As a result, the record supports the juvenile court's finding under R.C. 2151.414(D)(2)(c).

### d. R.C. 2151.414(D)(2)(d)

{¶ 46} Under the final factor, R.C. 2151.414(D)(2)(d), the juvenile court found that "[p]rior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal Custody." Here, there is nothing in the record concerning a relative or other interested person filing a motion for legal custody of U.B. The juvenile court's findings under this factor are supported by the record.

{¶ 47} The juvenile court's findings under R.C. 2151.414(D)(2) are supported by competent and credible evidence in the record. Since all of the factors under R.C. 2151.414(D)(2) apply, "permanent custody was necessarily in the best interest of the child and the juvenile court was required to grant permanent custody to CCDCFS." *In re P.J.,* 2021-Ohio-1821, ¶ 26 (8th Dist.). "A finding under section (D)(2) of R.C. 2151.414 mandates the trial court find it is in a child's best interest to be placed in the agency's permanent custody." *A.S.,* 2021-Ohio-3829, at ¶ 42 (8th Dist.), citing *In re G.A.,* 2020-Ohio-2949, at ¶ 59 (8th Dist.).

{¶ 48} Since the juvenile court's determination under (D)(2) is supported by competent and credible evidence, we do not need to determine if the juvenile court correctly applied the factors set forth under (D)(1). *Id.* Accordingly, Mother's sole assignment of error is overruled.

## III. Conclusion

{¶ 49} For the foregoing reasons, we conclude that the juvenile court's findings are supported by competent and credible evidence within the record. Therefore, the juvenile court's judgment granting permanent custody was not against the manifest weight of the evidence.

{¶ 50} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR