[Cite as *In re C.H.*, 2025-Ohio-5352.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE C.H., JR.

[Appeal by J.H., Mother]

:
:
:

No. 115194

_____

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 26, 2025

_____

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD22906112

_____

*Appearances:*

Christina M. Joliat, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Kelly Wojtila, Assistant Prosecuting Attorney,
*for appellee.*

MARY J. BOYLE, J.:

{¶ 1}   In this companion appeal, appellant J.H. ("Mother") appeals the decision of the Cuyahoga County Juvenile Court terminating her parental rights and awarding permanent custody of her minor child, C.H., to the Cuyahoga County

Division of Children and Family Services ("CCDCFS" or "agency").[1]  Mother raises the following two assignment of error for review:

> **Assignment of Error I:**  The trial court's order granting permanent custody to [CCDCFS] was not based upon sufficient clear and convincing evidence and it erred in finding permanent custody to be in the best interest of the child.

> **Assignment of Error II:**  The trial court's denial of Mother's request for continuance was material and in error.

{¶ 2}  For the reasons set forth, we affirm the juvenile court's judgment.

## I.  Facts and Procedural History

{¶ 3}  This matter began in April 2022, when C.H. was removed from his Mother and Father.  This complaint could not be resolved within the statutory time frame so the matter was refiled on June 17, 2022, along with a motion for pre-dispositional temporary custody of C.H.  In this refiled complaint, CCDCFS alleged that C.H. was neglected and dependent and requested a dispositional order of temporary custody to the agency.  The complaint alleged that C.H. had been in the uninterrupted custody of the agency since April 26, 2022 (C.H. was three years old at that time); Mother and Father have substance-abuse issues that prevent them from providing appropriate care for C.H.; Mother was currently sentenced to an in-patient drug rehabilitation program because of a felony criminal conviction for attempted assembly or possession of chemicals used to manufacture controlled substances and possessing criminal tools; Mother and Father lack stable housing to

---

[1] This appeal is a companion to Father's appeal, *In re C.H.*, 8th Dist. Cuyahoga No. 115187.  We only address Mother's appeal herein.

provide for C.H.'s basic needs; Mother and Father were evicted from their housing in December 2021 and have resided in multiple locations since that time; and Father has another child who was previously adjudicated neglected and dependent partly because of Father's substance-abuse issues. The complaint further alleges that C.H. was previously adjudicated neglected and dependent for similar reasons and was committed to agency custody. In the previous case, Mother and Father worked with a case plan and C.H. was returned to them in May 2020. On June 21, 2022, the court granted the agency's motion for predispositional temporary custody.

{¶ 4} In September 2022, the court held an adjudicatory hearing, at which Mother admitted to the allegations of the complaint as amended, and the court adjudicated C.H. dependent. Then in April 2023 and August 2023, CCDCFS filed extensions for temporary custody, stating more time was needed for Mother to complete her case-plan objectives. The court granted both motions.

{¶ 5} Thereafter, CCDCFS moved to modify temporary custody to permanent custody. The court proceeded to a hearing on this motion in April 2025. Prior to the start of the permanent custody trial, Mother's counsel requested a continuance because of Mother's unexplained absence from court. Mother's counsel stated that her attempts to reach Mother were unsuccessful. Mother's counsel further stated that she spoke with Mother the day before and believed that Mother was aware of the hearing. CCDCFS's counsel objected to the continuance because Mother had been properly notified of trial, she was present at the hearing two days prior, on April 15, 2025, at which time the trial was discussed, and Mother failed to

communicate any reason for her absence to her attorney. After noting that the permanent custody motion had been pending since February 2024, because of prior continuances, and Mother was "sitting right there" on April 15, 2025, when "it was very explicitly discussed at length that we would be going to trial today," the court denied Mother's motion for continuance. (Tr. 9-11.) The following evidence was then adduced at trial.

{¶ 6} CCDCFS Case Worker Leonid Tselentchook ("Tselentchook") testified that he became involved with the matter in July 2024. C.H. was removed in April 2022 because of "drug use and drug possession" by both Mother and Father and has remained in the uninterrupted custody of CCDCFS since then. (Tr. 22.) According to Tselentchook, this is the second time C.H. has been in agency custody. C.H. was removed the first time because of his parents' substance abuse. Mother and Father, however, worked through their case plan, and C.H. was returned to them. With regard to C.H.'s current removal, Tselentchook testified that no further extensions of temporary custody are available. The agency created a case plan to promote the permanency plan of reunification with adoption being the concurrent plan if reunification was not possible. Mother's case plan listed services for mental health, substance abuse, and housing.

{¶ 7} At the time Tselentchook was assigned to the case, Mother was treating at New Visions for substance abuse and mental health. Tselentchook testified that Mother did not "successfully complete that treatment program[.]" (Tr. 24-25.) Mother then was referred to West Shore Community House and May

Dugan. Tselentchook further testified that Mother did not complete the substance-abuse assessments at either facility. Mother had not completed any additional assessments, and "from what she told [Tselentchook], she was planning to go [to detox] right after trial." (Tr. 26.) Tselentchook further testified that when he was first assigned to the case, he asked Mother to submit to random drug testing approximately once a month. At the first testing, Mother admitted "she was using again when she relapsed the first time after [a] six-month break. Then she was saying it makes no sense to go because it would be positive anyway." (Tr. 26.)

{¶ 8} As it relates to Mother's mental health, Mother has diagnoses of generalized anxiety disorder, post-traumatic stress disorder, depression, and obsessive-compulsive disorder. Mother's treatment for the mental-health concerns included counseling and medication. Mother relayed to Tselentchook that she could not tolerate the medication well and was not willing to take it. In lieu of the medication, Mother admitted to Tselentchook that she self-medicated with methamphetamines. According to Tselentchook, Mother had not completed a mental-health assessment with any of the providers and at the time of trial, she was not participating in counseling. Tselentchook testified that Mother had not made significant progress on the mental health case-plan objective and there was no time left in temporary custody for her to do so.

{¶ 9} In addition to the substance abuse and mental health case-plan objectives, Mother was also required to obtain and maintain appropriate housing. Tselentchook testified that Mother is renting a house that she moved into

approximately four months prior to trial. Tselentchook further testified that Mother relayed to him that she is employed at a gas station.

{¶ 10} With regard to Father, Tselentchook testified that his case-plan objectives were parenting and substance abuse. Father has been incarcerated throughout the entire pendency of the case in relation to drug-possession and drug-trafficking charges. Father was first placed in the Cuyahoga County Jail in April 2022 and is currently at Grafton Correctional Institution. While in prison, Father participated in services for both his parenting and substance abuse. Father testified that he has been sober since April 24, 2022, and is the chairperson of his Alcoholics Anonymous group.

{¶ 11} Father further testified that his earliest anticipated release from prison would be approximately the end of November 2025, at which point he would be sent to a halfway house for six months. After approximately three weeks there, he could "get an ankle monitor and go to an address and keep [his] employment." (Tr. 64.) At the time of trial, Father did not know which halfway house he would be living at, but he did know that he would be unable to have C.H. live with him at the facility.

{¶ 12} Tselentchook testified that C.H. receives counseling as a supportive service. Tselentchook did not believe that either parent could meet C.H.'s "special needs" but did not expound on what those needs are. (Tr. 34.) Mother's current visitation schedule is once per week for two hours. The visits are supervised because Mother did not complete her case plan goals. Mother's visits were mostly consistent,

but she missed a recent visit because she "was arrested again." (Tr. 34.) While Tselentchook testified that the interactions at the visits between Mother and C.H. were good, he did not believe that was sufficient for reunification because "there are still major concern[s] with case plan." (Tr. 35.) With regard to Father's visitation, the visits are not "exactly scheduled" because Father is incarcerated. (Tr. 35.) The visits are scheduled around C.H.'s and Father's availability. Tselentchook testified that the visits between Father and C.H. are good, but as with Mother, he did not believe that was sufficient for reunification because Father is incarcerated.

{¶ 13} C.H., who was six years old at the time of trial, was in a foster home. He had been with his current caregiver for approximately one year. Tselentchook testified that C.H. had at least two prior placements prior to this placement. According to Tselentchook, the current foster mother has not indicated a willingness to adopt C.H. because "she just adopt[ed] another kid and her hands are full." (Tr. 55.) While the agency attempted throughout the pendency of the proceedings to identify an appropriate relative caregiver for the child, these efforts were unsuccessful. Tselentchook testified that there were no known relatives or interested individuals who were willing and able to take legal custody of C.H.

{¶ 14} The guardian ad litem ("GAL") acknowledged that C.H. currently is in a good placement. The GAL stated, C.H. "is bonded with the placement. He calls her grandmother. She is very kind to both of the parents. She allows him to have access unfettered to both of the parents. Phone calls occur when dad calls him and then mom calls. It's a good placement where he should stay." (Tr. 80.) The GAL

further acknowledged that Mother and Father have problems, but did "not think that permanent custody and severing the parents' rights is in the best interest of C.H." (Tr. 80.)

{¶ 15} The GAL believed it would be difficult to adopt C.H. because of his behavioral problems. Specifically, "[m]ajor tantrums. The foster mother is concerned about him putting holes in the walls. He has some behavioral issues in school, also. The behavioral issues have caused him to be removed from, I think at least three other placements. I know the social worker testified to two." (Tr. 78-79.) The GAL also believed that C.H. has "a diagnosis of ADHD." (Tr. 82.) The GAL's concern is that "if permanent custody is granted, first off, it cuts off reunification with the parents, which I think is viable, and it sets him up to be removed from his third or fourth placement at six years old. And I don't think that's in his best interests at all." (Tr. 80.) The GAL opined that C.H. should continue in the temporary custody of the agency until Mother and Father are able to reunify with him.

{¶ 16} When questioned about this recommendation by both the court and counsel for CCDCFS, the GAL acknowledged that C.H. had been in custody for longer than the two years permitted by law. On this point, the GAL stated, "I understand your time limits. Those are not my time limits, though. My job is to make a recommendation in the best interest of the child." (Tr. 83.) When asked by counsel for CCDCFS if the GAL could recommend that C.H. go home today to

Mother or Father, the GAL replied, "No, I cannot.  That's why I recommended temporary custody continue." (Tr. 83.)

{¶ 17} Following the conclusion of the trial, the court issued a decision in which it terminated Mother and Father's parental rights and ordered that C.H. be placed in the permanent custody of CCDCFS.  In its judgment entry, the court found by clear and convincing evidence that C.H. has been in the temporary custody of CCDCFS for 12 months or more of a consecutive 22-month period, C.H. cannot be placed with one of his parent's within a reasonable time, and it is in C.H.'s best interest to be placed in the permanent custody of CCDCFS.  The court further found that reasonable efforts were made to prevent C.H.'s removal, including Mother's referrals for "drug treatment, mental health counseling, parenting, [and] housing. Mother has not completed services.  The Father has been referred to parenting, substance abuse treatment.  Dad is incarcerated." (Journal entry, May 9, 2025.) The court adopted the permanency plan, which is adoption.

{¶ 18} It is from this order that Mother now appeals, raising two assignments of error for review.

## II.  Law and Analysis

{¶ 19} In the first assignment of error, Mother challenges the juvenile court's permanent custody award to the agency.  Mother argues that the juvenile court's decision to terminate her parental rights and grant permanent custody of C.H. to the agency was against the manifest weight of the evidence and the court's decision was not in C.H.'s best interest because she "engaged substantially and obtained two

extensions of temporary custody [and this] is a case where the parents are married and they each have substance abuse issues to address." (Mother's brief, p. 8.) She maintains that C.H. is well bonded with her and Father and that the denial of permanent custody would allow her time reengage in mental-health and substance-abuse services and would allow Father time to reintegrate into society and obtain housing. We note that Mother has failed to cite to the record on which she relies as required by App.R. 16(A)(7), which requires "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) permits the court to disregard an assignment of error if the party raising it fails to comply with the requirements of App.R. 16(A). However, in the interest of justice we will address her argument.

### A. Standard of Review

{¶ 20} At the outset, we recognize that the right to raise one's own child is "an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 156 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). This right, however, is not absolute. "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*,

59 Ohio St.2d 100, 106 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App. 1974).

{¶ 21} The Supreme Court of Ohio has provided guidance on the standard of review in permanent custody cases. The Court held:

> [T]he proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments presented by the parties.

*In re Z.C.*, 2023-Ohio-4703, ¶ 18.

{¶ 22} While Mother mentions sufficient evidence in her assigned error, Mother only bases her arguments on the manifest-weight-of-the-evidence standard. The *In re Z.C.* Court reexplained this standard as follows:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

## B. Permanent Custody — R.C. 2151.414

{¶ 23} R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re B.P.*, 2023-Ohio-1377, ¶ 27 (8th Dist.), citing *In re S.C.*, 2018-Ohio-2523, ¶ 20 (8th Dist.). The first prong authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e). "Only one of the[se] factors must be present to satisfy the first prong of the two-part analysis for granting permanent custody to an agency." *In re D.H.*, 2021-Ohio-3821, ¶ 27 (8th Dist.), citing *In re L.W.*, 2017-Ohio-657, ¶ 28 (8th Dist.).

{¶ 24} Under the second prong of the R.C. 2151.414 analysis, when *any one* of the above factors exists, the juvenile court must then analyze whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent

custody to the agency under R.C. 2151.414(D). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

### 1. First Prong—R.C. 2151.414(B)

{¶ 25} Here, the juvenile court made its findings under R.C. 2151.414(B)(1)(a) and (d). Mother does not dispute the court's finding that "the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period" as set forth in R.C. 2151.414(B)(1)(d). Indeed, C.H. was placed in CCDCFS custody on April 26, 2022, and has remained in continuous agency custody since that time. The court further found that C.H. should not or could not be placed with Mother within a reasonable time under R.C. 2151.414(B)(1)(a). This finding was based on three of the R.C. 2151.414(E) factors: (E)(1), (E)(2), and (E)(16).[2]

---

[2] "When assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E)." *In re L.H.*, 2024-Ohio-2271, ¶ 34 (8th Dist.), citing *In re A.V.*, 2014-Ohio-5348, ¶ 58 (8th Dist.); *In re R.M.*, 2012-Ohio-4290, ¶ 14 (8th Dist.); and *In re B.P.*, 2019-Ohio-2919, ¶ 13 (8th Dist.). R.C. 2151.414(E) provides that if the court finds, by clear and convincing evidence, that at least one of the enumerated factors set forth in (E)(1)-(E)(16) exists as to each of the child's parents, then the court must find that the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents.

Mother appears to only challenge the trial court's determination that C.H. could not be placed with her in a reasonable time frame based upon R.C. 2151.414(E)(1), which provides that Mother has failed continuously and repeatedly to substantially remedy the conditions causing C.H. to be placed outside the home.

{¶ 26} There is clear and competent evidence in the record, however, to support the juvenile court's finding under R.C. 2151.414(B)(1)(d) that C.H. was in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period.  C.H. was placed in the emergency temporary custody of CCDCFS in April 2022, and remained in CCDCFS's continuous, temporary custody at the time of the permanent-custody hearing in April 2025.  Again, Mother does not dispute this finding.  Because only one factor is needed, the first prong of the two-part analysis is satisfied and we need not consider the court's findings under R.C. 2151.414(B)(1)(a) regarding whether C.H. should not or could not be placed with Mother in a reasonable time.

{¶ 27} Having found that the juvenile court properly determined that at least one of the R.C. 2151.414(B)(1) factors applies by clear and convincing evidence, we must next determine whether the juvenile court appropriately found by clear and convincing evidence that granting permanent custody to CCDCFS is in C.H.'s best interest under R.C. 2151.414(D).

## 2. Second Prong — Best Interest Determination under R.C. 2151.414(D)

{¶ 28} In determining whether permanent custody is in the child's best interest, the juvenile court must consider the relevant factors set forth in either R.C. 2151.414(D)(1) or (D)(2). *In re U.B.*, 2025-Ohio-1265, ¶ 27 (8th Dist.). In the instant case, the court found "by clear and convincing evidence" that "permanent custody [to the agency] is in the best interest of the child." (Journal entry, May 9, 2025.) The court made this determination under both R.C. 2151.414(D)(1) and (D)(2).

{¶ 29} Mother disputes the juvenile court's determination that granting permanent custody of C.H. to the agency was in his best interest. Mother notes that C.H., who was six years old at the time of trial, has ADHD and has tantrums so severe that he has had up to four placements while in temporary custody. Mother maintains that C.H. is well bonded to her, displays better behavior, and is open to redirection from Mother and Father. In addition, Mother contends that she reached six months of sobriety and has plans to reengage because she had adverse reactions to her medications, which led to her relapse. Mother agrees with the GAL in that permanent custody is not in C.H.'s best interest. Mother contends that the denial of permanent custody will allow for Father to reintegrate into society and obtain housing and allow her time to engage in mental-health and substance-abuse services.

{¶ 30} Mother, however, only challenges the findings the juvenile court made with respect to R.C. 2151.414(D)(1). Mother does not challenge the court's findings under subsection (D)(2). We have previously stated that "[w]e do not need to address the juvenile court's findings under (D)(1) if the court also determined that it was in the child's best interest to be placed into permanent custody under subsection (D)(2)." *In re U.B.* at ¶ 28, citing *In re A.S.*, 2021-Ohio-3829, ¶ 42 (8th Dist.) ("We do not need to determine if the trial court correctly applied the R.C. 2151.414(D)(1) factors, however, because the trial court also found that it was in [the child's] best interest to be placed in the permanent custody of the agency under R.C. 2151.414(D)(2)."). "A finding under section (D)(2) of R.C. 2151.414 mandates that the trial court find it is in a child's best interest to be placed in the agency's permanent custody." *In re A.S.* at ¶ 42, citing *In re G.A.*, 2020-Ohio-2949, ¶ 59 (8th Dist.).

{¶ 31} R.C. 2151.414(D)(2) states:

If all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

If the juvenile court makes the four enumerated findings under R.C. 2151.414(D)(2), *"permanent custody is per se in the child's best interest and the court 'shall' commit the child to the permanent custody of the agency."* (Emphasis added.) *In re A.S.* at ¶ 44, quoting *In re G.A.* at ¶ 61, citing *In re J.R.*, 2018-Ohio-1474, ¶ 41 (10th Dist.).

{¶ 32} To ascertain whether R.C. 2151.414(D)(2)(a) applies, we must look to R.C. 2151.414(E) because determining "that a child cannot be placed with the parents within a reasonable time or should not be placed with them, the court must find, by clear and convincing evidence, that at least one of the factors in R.C. 2151.414(E)(1)-(16) is present." *In re G.A.* at ¶ 62, citing *In re S.C.*, 2019-Ohio-3664 (8th Dist.), citing *In re S.W.*, 2018-Ohio-1672 (11th Dist.). Here, the juvenile court made findings with respect to Mother under R.C. 2151.414(E)(1), (2), and (16). As stated above, Mother only challenges (E)(1), arguing that the record does not support the trial court's findings.

{¶ 33} Here, the court found under R.C. 2151.414(E)(1) that Mother failed to substantially remedy the conditions causing C.H. to be placed outside the home. The record supports this finding because Mother was unable to successfully complete her case plan despite two extensions. Mother's chemical dependency is so severe that it makes her unable to provide an adequate, permanent home for C.H.

Moreover, while the GAL recommended temporary custody continue until reunification with either parent became possible, the GAL acknowledged that this is contrary to law. And, at the time of the permanent custody hearing, the GAL did not recommend that C.H. go home with either Mother or Father. In addition, Father is currently incarcerated. At trial, Father testified that he will be incarcerated or in a halfway house through the end of November 2025. Mother argues that Father will be available to provide a legally secure placement for C.H. at that time. She contends that Father's release date is within the 18 months after the dispositional hearing as set forth in R.C. 2151.414(E)(12). Under the plain language of R.C. 2151.414(E), however, the existence of a single factor will support a finding that a child cannot be placed with either parent within a reasonable time. The court found under (E)(1) that C.H. cannot be placed with either parent within a reasonable time, which is all that the statute requires.

{¶ 34} Further, R.C. 2151.414(D)(2)(b), (c), and (d) also apply. C.H. had been in CCDCFS custody more than two years and no longer qualified for temporary custody under R.C. 2151.415(D)(4), which prohibited the court from continuing the order of temporary custody beyond April 26, 2024. C.H. did not meet the requirements for a planned permanent living arrangement (to do so, a child must be at least 16 years old) and CCDCFS was unable to identify any relatives who could take legal custody of him. Therefore, no matter the juvenile court's best-interest findings under R.C. 2151.414(D)(1), section (D)(2) mandates that permanent custody was in C.H.'s best interest and that the court "'shall commit the child to the

permanent custody of a public children services agency or private child placing agency[.]" *In re A.S.*, 2021-Ohio-3829 at ¶ 48 (8th Dist.), quoting *In re G.A.*, 2020-Ohio-2949 at ¶ 68 (8th Dist.).

{¶ 35} In light of the foregoing, we find that there is clear and convincing evidence in the record to support the court's determination that permanent custody to CCDCFS is in C.H.'s best interest. Accordingly, we find that the court's decision to grant permanent custody to CCDCFS is not against the weight of the evidence as Mother contends.

{¶ 36} Accordingly, the first assignment of error is overruled.

## C. Motion to Continue

{¶ 37} In the second assignment of error, Mother contends that the court erred when it denied her motion to continue, which was made by Mother's counsel prior to the start of trial. Mother, again, fails to cite to any portion of the record. Additionally, Mother fails to cite to any case law or rules in support of her argument as required by App.R. 16(A)(7). As stated above, this court may disregard her assigned error. App.R. 12(A)(2). However, in the interest of justice we will address this argument.

{¶ 38} The decision to grant or deny a motion for continuance lies within the discretion of the trial court, and we will not reverse the decision on appeal absent an abuse of that discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575 (1964); *State v. Bayless*, 48 Ohio St. 2d 73 (1976). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way,

in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 39} In this case, prior to the start of trial, Mother's counsel made an oral motion to continue because of Mother's unexplained absence from court. Mother's counsel stated that her attempts to reach Mother were unsuccessful. Mother's counsel further stated that she spoke with Mother the day before and believed that Mother was aware of the hearing. CCDCFS's counsel objected to the continuance because Mother had been properly notified of trial, she was present at the hearing two days prior on April 15, 2025, at which time the trial was discussed, and Mother failed to communicate any reason for her absence to her attorney. After noting that that the permanent custody motion had been pending since February 2024, because of prior continuances, and Mother was "sitting right there" on April 15, 2025, when "it was very explicitly discussed at length that we would be going to trial today," the court denied Mother's motion for continuance. (Tr. 9-11.) Based on the foregoing, we cannot say the juvenile court abused its discretion in denying Mother's motion for continuance.

{¶ 40} Therefore, the second assignment of error is overruled.

{¶ 41} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court
of Appeals.)